NEW YORK COUNTY.—HON. D. G. ROLLINS, SURRO-
GATE.—Dec., 1885; Jan., March, 1886.

HENRY *v.* HENRY.

*In the matter of the application for revocation of probate of the will of* JAMES G. HENRY, *deceased.*

Although an application for a commission to take the deposition of a witness, under Code Civ. Pro., ch. 9, tit. 3, art. 2, relating to "depositions taken without the State, for use within the State," should not be denied because the moving affidavit fails to set forth facts and circumstances calculated to satisfy the court of the materiality of the witness sought to be examined, yet where an opposing party makes it appear that material testimony could not probably be elicited upon the examination, the applicant must disclose what facts he expects to prove.

A contest respecting the *status* of a party to a special proceeding, instituted to procure the probate or revocation of probate of a will, should generally be tried, at the outset, before the taking of testimony, by commission or otherwise, touching the genuineness and validity of the disputed instrument.

One who asserts his relationship, as one of the next of .kin of a decedent, and his title, as such, to contest the admission to probate of an alleged will of the latter, cannot, for the purpose of establishing his *status*, impeach, in the Surrogate's court, a marriage between decedent and another on the ground of force or fraud in its procurement; or the validity of a judgment dissolving a prior marriage between such other person and a former consort, upon allegations that the same was obtained by collusion, and for the purpose of entering into the second marriage.

An order of a Surrogate's court, denying a motion for the simultaneous trial of different issues joined in a special proceeding pending therein,

does not "affect a substantial right" (Code Civ. Pro., § 2570), and is not appealable.

Under Code Civ. Pro., §§ 1310, 2584, relating to a stay upon appeal, the perfecting of an appeal from an order of a Surrogate's court, denying an application for the issuing of a commission to take testimony to be · used in a special proceeding pending therein, does not operate as a suspension of the hearing.

MOTION by Evan J. Henry, decedent's father, for an order directing commissions to issue for the examination of certain non-resident witnesses, in proceedings instituted by him for the revocation of probate of decedent's will; opposed by Sarah M. Henry, proponent of the will, and a beneficiary named therein.

RICHARDS & HEALD, *for the motion.*

F. H. CHURCHILL, *opposed.*

THE SURROGATE.—I adhere to the opinion that I. expressed in Cadmus v. Oakley (2 *Dem.*, 298), that an application for a commission to take the testimony of a witness without the State, ought not to be denied merely because the moving party has failed to set forth facts and circumstances calculated to satisfy the court that such testimony is material. But, when the party opposing the application has made it appear that the witnesses sought to be examined could not probably give any material testimony, the moving party is bound to disclose what facts he intends to prove.

Under such circumstances, the Supreme court, in Vandervoort v. Columbian Ins. Co. (3 *Johns. Cas.*, 137) said: "On the whole, we think that enough is shown by the plaintiffs to render the propriety of

issuing the commission doubtful and suspicious, and it
is incumbent on the defendants to remove this doubt
by showing the particular object of the commission,
and specifying the evidence they want to obtain, and
in what manner it is material.   If they pursue the
application, by doing this, we shall then be better
able to judge of the propriety of granting it.  We
are, therefore, of opinion that the application ought
not to succeed, under the circumstances which now
appear."   The case just cited was subsequently ap-
proved in Bank of Commerce v. Michel (1 *Sandf.*,
687), and in Rogers v. Rogers (7 *Wend.*, 514).

I am not disposed at present to grant any applica-
tion for the issuance of commissions to take testimony
upon the issue of undue influence, as it is possible
that that issue may not need to be tried at all.   The
moving party will be permitted to submit affidavits
showing what material testimony, upon the prelimi-
nary issue as to who is decedent's next of kin, can
be given by the proposed witnesses.

THE following opinion was filed, in the same mat-
ter, January 22nd, 1886 :

THE SURROGATE.—The paper purporting to be the
last will of this decedent was admitted to probate by
the Surrogate on October 25th, 1883.   On October
17th, 1884, decedent's father, Evan J. Henry, filed a
petition, asking that such probate be revoked.   In
this petition it was alleged, among other things, that
the making and execution of the will had been pro-
cured by fraud, circumvention and undue influence of

its proponent, Sarah M. Henry, a beneficiary thereunder, who claimed to be the decedent's widow, and to have been married to him in January, 1882.

It was further alleged, that, at the time of such marriage, and at the time of decedent's death, the proponent was not his lawful wife, but was the lawful wife of one Simmons, and that a decree entered in December, 1881, in the Supreme court, by the provisions whereof the proponent had been divorced from said Simmons, was fraudulently and collusively procured, and was therefore invalid and of no effect. The petitioner declared himself to be his son's only next of kin, and to be entitled as such to dispute the validity of the paper here in controversy. The material allegations of this petition for revocation were denied in an answer.

On March 19th, 1885, the proponent was granted an order to show cause why the issue as to the *status* of the contestant should not be tried and passed upon, before any other steps were taken in the proceeding for revocation of probate. Counsel for the several parties in interest subsequently appeared before the Surrogate. Upon the suggestion of contestant's counsel that, in the orderly progress of the cause, inquiry as to the *status* of his client would be entered upon in the first instance, in accordance with Rule 4 of this court, the application of the proponent was withdrawn. By the rule referred to, it is substantially provided that, whenever in a probate controversy, a dispute arises as to the right of the contestant to be a party to the proceeding, the Surrogate will hear and determine that question at the outset, unless it ap-

pears that a different course would on the whole be advisable.

Upon a motion made in behalf of the proponent in November last, the Surrogate made an order that " the preliminary issue as to the *status* of said contestant and the validity of the proponent's marriage to the decedent and ·the legitimacy of their infant son " should be placed on the calendar for trial upon a day in such order specified. Before the entry of this order, a motion had been made, on behalf of the contestant, for an order directing the examination by commission of certain witnesses named in the affidavits by which said motion was supported. In opposition to the issuance of such commissions, the proponent presented affidavits undertaking to show what testimony could be given by the persons sought to be examined, and denying that such testimony would be relevant or material to the preliminary issue, whether at the death of the decedent the contestant was or was not his next of kin and heir at law.

The Surrogate decided by his memorandum of December 14th, that, under the circumstances, the application for commissions should be denied, unless the moving party should submit additional affidavits " showing what material testimony upon the preliminary issues . . . . . could be given by the proposed witnesses." On December 18th, 1885, the petitioner filed new affidavits. The motion for the issuance of commissions was then reargued on December 21st, as was also a motion for an order directing that all the issues in the probate proceeding " be heard and passed upon together and not separately."

The latter application must be denied.  In case the petitioner for revocation of probate shall succeed in establishing his claim to be decedent's next of kin, it is likely that a protracted controversy will ensue respecting the validity of the paper heretofore decreed to be the decedent's last will.  To enter simultaneously upon the latter inquiry, and upon an investigation of the petitioner's right to be a party to it, would be, as it seems to me, utterly unnecessary and unprofitable.  It is very likely that some matters of evidence would be applicable alike to the preliminary issue and to issues that may present themselves for consideration when that shall have been determined. But I am confident, both from the light afforded by the affidavits herein submitted, and from the very nature of things, that the great bulk of the evidence likely to be offered and received upon the question of the validity of the will would be entirely irrelevant to a determination of the question as to the petitioner's *status*.

No case, indeed, has attracted my attention in which the practical good sense of Rule 4 has been more conspicuously illustrated than in the very case now before me.  If James Griffiths Henry, Jr., is the son of this decedent, born in lawful wedlock, then Evan J. Henry is not entitled to contest this decedent's will.  If, on the other hand, James Griffiths Henry, Jr., is *not* decedent's legitimate son, Evan J. Henry is himself decedent's next of kin and heir at law.  The *status* of these rival claimants should first be ascertained before any testimony is taken, by commission or oth-

erwise, save that which is pertinent to the preliminary issue of this controversy.

It is not necessary for me to declare, at the present stage of the cause, how far, if at all, the evidence which the contestant seeks to obtain by commission may be admissible upon the question of undue influence, in case the claim of Evan J. Henry to be the decedent's next of kin shall be determined in his favor. I am now to decide this question, and this only: Would the proposed evidence, or any of it, afford legitimate aid in ascertaining whether the proponent is the decedent's widow, and whether James G. Henry, Jr., is his son?

I am clear that the contestant cannot in this proceeding be allowed to impeach the validity of the decree by which the proponent was divorced from Simmons, except by evidence tending to show that, either as regards the parties or as regards the subject matter, the court in which that decree was entered was without jurisdiction to pronounce it. This seems to me to be indisputably established by the decisions of the Court of Appeals in Kinnier v. Kinnier (45 *N. Y.*, 535); and in Ruger v. Heckel (85 *N. Y.*, 483).

In the first of these cases, the appellant, who was the husband of the respondent, brought an action for the annulment of their marriage, upon the ground that, before such marriage was solemnized, the respondent had been lawfully married to another person; that her marriage with such former husband continued to be in force, and that a pretended decree of divorce, by which it was claimed to be dissolved, was

invalid and ineffectual because procured by fraud and collusion. The allegations of the complaint were not disputed, and the question determined arose upon a demurrer. In sustaining that demurrer, CHURCH, J., pronouncing the unanimous opinion of the court, said: " *The wife was competent to marry because her former marriage was not then in force,* and, being competent, it is of no legal consequence to the plaintiff how she became so. Conceding fraud as alleged, he cannot avail himself of it."

In the later case of Ruger v. Heckel (*supra*), this doctrine was asseverated in terms equally unequivocal and still more emphatic. A., the plaintiff in that case, brought an action against B., his wife, and C., her former husband, seeking thereby an annulment of a divorce which B. had collusively obtained from C., and of the marriage which had subsequently taken place between himself and B. DANFORTH, J., pronouncing the opinion of the court, said: "In bringing this action, the plaintiff meddled with a matter that did not concern him. . . . . The record which he produces shows a judgment binding upon both parties. . . . . It is impossible to discover any ground in law or morals upon which the complaint can stand. . . . . The court regards the plaintiff as a suitor without a cause of action, and rejects his petition, because he is not aggrieved. The parties to the judgment do not complain, nor does either of them ask aid from the court. . . . . The court which rendered the judgment had jurisdiction over the subject matter and the parties, and they are bound by it."

In the case just cited, it was strongly urged in be-

half of the plaintiff that he was entitled to the relief
sought because the collusion and falsehood by which
his wife had obtained a divorce from her former hus-
band were parts of a fraudulent scheme to which
both the defendants were parties, and which had for
its ultimate object the bringing about of a marriage
between himself (the plaintiff) and the female de-
fendant.  That is the very ground upon which the
contestant plants himself in the case at bar.  But if
this decedent, in his lifetime, would have been power-
less to procure the annulment of the divorce between
the proponent and Simmons, that divorce cannot now
be impeached by decedent's father in protection of
any property rights that he might enjoy as his son's
next of kin, in case it shall be discovered that the
son never contracted a lawful marriage.

As strong a claim, upon the score of property
rights, as the contestant here sets up might have
been urged by the parties plaintiff in the two cases
above cited.  In each of them, the decision of the
Court of Appeals secured to a wife from whom her
husband was seeking to free himself, the right of
dower in such real property as that husband had or
might subsequently acquire, the right to call upon
him for support, and the right, in case he should die
intestate, of sharing in his personal estate under the
Statute of Distributions.

The contestant further claims that he should be
permitted to offer evidence tending to impeach the
marriage between the proponent and the decedent,
on the ground of force, duress and fraud which the
proponent is claimed to have employed in bringing

about such marriage. This claim is not, in my judgment, well founded. If the marriage was duly solemnized, its existence and effects cannot, upon any such grounds, be ignored in this proceeding. It is provided by R. S., part 2, ch. 8, tit. 1, § 4 (3 Banks, 7th ed., 2332), that "when either of the parties to a marriage shall be incapable, for want of age or understanding, of consenting to a marriage, or shall be incapable, from physical causes, of entering into the marriage state, or when the consent of either party shall have been obtained by force or fraud, the marriage shall be void *from the time its nullity shall be declared by a court of competent authority.*"

In a proceeding such as this, the Surrogate can no more disregard a marriage, which is assailed because of force or fraud in its procurement, than he can disregard a marriage sought to be impeached on account of alleged want of age or alleged mental or physical incapacity. Parties entitled to relief upon any of these grounds must resort to another tribunal for the remedies provided by the Code of Civil Procedure (§§ 1743, 1747, 1750, etc).

Upon careful consideration, I am satisfied that none of the testimony which the contestant seeks to obtain from the witnesses named in his affidavits would be pertinent to what I have styled the preliminary issue of this controversy.

The application for commissions must, therefore, be denied, without costs, and without prejudice to its renewal in case the contestant's claim to be decedent's next of kin shall be hereafter sustained.

THE contestant having made a motion that all the issues joined in the proceeding for revocation of probate be tried simultaneously,—which was denied,—and the like disposition having been made of the application for the issuing of commissions, appeals were taken from the respective orders; whereon questions arose which were decided as shown by the following opinion, filed March 16th, 1886 :

THE SURROGATE.—The procedure relating to appeals from decrees and orders of this court is established by ch. 18, tit. 2, art. 4 of the Code.   Section 2570 provides that an appeal may be taken from any decree or from any order " affecting a substantial right."   It is declared by § 2584 that, except as·otherwise expressly prescribed, " a perfected appeal has the effect, *as a stay of proceedings to enforce the decree or order appealed from,* prescribed in § 1310, with respect to a perfected appeal from a judgment."

By operation of § 1310, such an appeal effects a stay of all proceedings to enforce a judgment or order appealed from, " except that the court or judge from whose determination the appeal is taken may proceed in any matter included in the action or special proceeding, and not affected by the judgment or order appealed from, or not embraced within the appeal."

Now I do not think that, by force of the statute just quoted, the appeals which have been taken by Evan J. Henry from the two orders lately made by the Surrogate have operated to stay the trial of this probate controversy which is now reached regularly on the calendar.   The order denying the motion for

union of the issues theretofore directed to be separately tried, cannot be held to involve "a substantial right" within the meaning of § 2570.   It affects mere modes of procedure that are entirely within the control of the trial court (Arthur v. Griswold, 60 *N. Y.*, 143; Whitney v. Townsend, 67 *N. Y.*, 40; Miller v. Porter, 17 *How. Pr.*, 526).   The order denying the motion for the issuance of commissions is doubtless appealable (Uline v. N. Y. Central R. R. Co., 79 *N. Y.*, 175; Wallace v. Am. Lin. Thread Co., 46 *How. Pr.*, 403); but in what manner and to what extent, if at all, is the appeal which has been taken effectual as a "stay," within the meaning of § 1310 ?   If the Surrogate had made an order *granting* the application for commissions, it is clear that a perfected appeal would have operated to prevent their issuance; but an appeal from an order *denying* such an application does not, it seems to me, have practical operation as a stay at all.

It has never been held, so far as I can ascertain, that an appeal, either from an order denying or from an order granting a commission, accomplishes *per se* a suspension of the trial of the action or proceeding for the purposes of which the aid of the commission has been sought.   The mischiefs that would result from such a practice can scarcely be overestimated. The court of original jurisdiction would lose all control of its calendar.   It would be utterly powerless to compel the trial of a cause, if it suited the pleasure of any of the parties thereto, even on the most frivolous pretext, to move for the issuance of a commission, and to appeal from an order denying his motion.   If

such were the true state of the law, the fact would long since, I think, have been ascertained and promulgated. If the Surrogate has erred in denying the contestant's application for the issuance of commissions, the error will be in due time corrected, and the order of denial reversed. Besides, in case the trial of the cause shall now be directed to proceed, the contestant can except to that direction, and avail himself of that exception by appeal, in the event that a decree shall be hereafter entered adverse to his interests. The trial must proceed.